to call the case, please. There's many good morning, Justices. Mr. May it please the court. My name is Melissa May, and I represent the defendant, D'Angelo Lindsey. In this case, this case presents a rare and happy circumstance in which the state of the defendant can actually agree on something. Both the state and the defendant agree that the Illinois Supreme Court's recent decision in people versus via should determine the outcome of the dispositive issue here on appeal. Here, the trial court erred and allowing the defendant's credibility to be impeached with his prior juvenile adjudication. The trial court mistakenly relied upon the 1999 amendments to the Juvenile Court Act, together with the case of people versus Harris, to determine that the defendant's prior juvenile adjudication was admissible to impeach his credibility. The trial court disregarded a well established line of cases, including Montgomery, Kearns, and Massey, all of which have held that a prior juvenile adjudication is not admissible against the defendant for impeachment purposes. Okay. Now, we all agree that that's a harmless error, right? Right. So, now the next obvious question is, can it be a harmless error? It can be considered a harmless error under people versus bonds, but under this case it was not a harmless error. And the reason it's not harmless is because the prejudice here is presumed based upon the fact that the line of cases that have addressed this issue have all pretty much held that prejudice is going to be presumed in a situation where prior adjudication or a prior conviction is admitted. As a matter of fact, in the Seminole case in 1971, the Supreme Court described the admission of these kinds of prior convictions and adjudications as the prejudice is unmistakable. So, in this case, it's not harmless error. It's particularly not harmless because of the fact that the defendant, Harris, needed to testify in an unimpeached manner regarding whether he was accountable in this case. Well, here's, did the state, did the state put the evidence on his prior conviction? This is one of the situations in which the state did not put the evidence on. What happened in this case was the court asked, specifically, when the defendant was going to testify, whether there was going to be any issue regarding prior adjudications. And the state acknowledged the defendant had a 2008 prior juvenile adjudication for residential burglary. And then there was some discussion held regarding how that was going to be admitted, whether it would be admitted for purposes of impeachment. And Defense Counsel then acknowledged that if the state was going to, if the court was going to rule in favor of the state allowing it to be admitted, then Defense Counsel himself was going to front that evidence so that it would reduce the impact that it had on the state. But then after that, the state, it was never discussed again, was it? No. The state never, the state didn't put this evidence on. No, the state did not put the evidence on. So if a, if a state's attorney gets a prior ruling from a trial judge that says someone let this evidence in, and then maybe over the course of the trial goes to lunch, goes, has a break, goes down, talks to his boss, the state's attorney. He says, I know you got that ruling, but don't, we don't need to do that. Don't do it. Okay. Just, even though the judge says you can, just because you can don't mean you should, and I'm telling you don't do that. So the assistant state's attorney goes back there to try the case, doesn't put it on, but then the defendant puts it on, thinking he's dulling the sword of somebody else. And this case seems a lot different than all the, even via, in the sense that the state never, while the ruling clearly was an error that it could come in, the state never put it in. And I'm just wondering, does that have? Well, the, the state, the, the court in via actually acknowledges the situation, which is similar to the case here, which is where a defendant does do this, get this evidence in, to front it in order to kind of dull its impact to the jury. The, the defendant doesn't have an obligation to have this evidence put in, in a way that it benefits the state the best. I mean, the defendant has the option of putting this in, in order to do this. But didn't in those other cases, even the states, there was, the, the state then even commented on the evidence at some point later. And what, what seems to me that might set this case apart a little bit is the state, as far as I can see from the record, the state never even mentioned. Well, but the, the problem is that it's, that's requiring the defendant to be basically clairvoyant, and to know that the, that the state's not going to make that argument. And if the state chose not to introduce the evidence later, that doesn't change the fact that the defendant still was putting this in. Isn't that an interlocutory order? I mean, couldn't a defendant, if the state had tried to put it on the defendant, could have argued again, and, and maybe got the judge to change his mind during the course of the trial? I mean, that was an interlocutory order, right? Right. Right. Okay. Well, anyway, this is, this is a curious case. Well, and, and again, I think that one of the, the weight of the Illinois cases prior to here has held that these juvenile adjudications generally can't be used to be impeached defendant. And the problem here was the defendant needed to present his unimpeached testimony in order to persuade the jury that he was not accountable under this case. The testimony in this case was that the defendant was, was saying that he did not know that his co-defendant had a gun. He did not know that his co-defendant was going to rob the, the gas station that day. He did not know that the co-defendant was going to shoot Mr. Dhingra. And the only evidence that the defendant was able to put on that would counter the state's accountability argument was his, was his impeached testimony. And the defendant was prejudiced because of the fact that his testimony was impeached. Again, as stated in Montgomery. And your argument is a reliance theory, probably, right? I'm sorry? A reliance theory is really what you're having. Correct. Correct. It is a reliance theory because this, this state argued pretty convincingly that this case was going to come down to the defendant's credibility, that this case needed to be before the jury so that they could ascertain the defendant's credibility. And the defense counsel relied upon the state's argument that it was important that the jury hear about this residential burglary adjudication in order to determine the defendant's credibility. So for these reasons, this defendant argues that VIA should apply in this case and that the defendant's prior adjudication should not have been admitted to impeach his testimony. But within the, in the air of other evidence, I mean, a witness said they saw, I believe it was the defendant with the gun in his hand leaving the store. Well, the witness was unable to identify the defendant. Well, but the witness could identify the other person. Correct. And the, the, the other, the person that was later, I guess, said he was a shooter. Correct. But then the gun was found at the defendant's sister's house with the defendant's fingerprint on it, right? Correct. Correct. But again, the defendant did testify that the reason that his fingerprint was on the gun was because he had touched the gun earlier and had given it back to the, to the co-defendant. So there was contradictory testimony. Let me ask you this. How else was the defendant going to explain to the jury why he didn't call the police after he was so horrified that his comrade shot this clerk without explaining that, gee, there's an arrest warrant out there for me and that's why he didn't call? Well, one of the ways the defendant could have explained it was the way he did it in his conviction in which he said that the reason that juveniles don't come forward or people don't come forward under these circumstances is because they're going to get accused of something that they didn't do. So he could have explained it that way, which is what he did in allocution. So, so if this court has no further questions, the defendant respectfully requests that this defendant's conviction be reversed. Can you elaborate that again in saying in allocution that the reason? Oh, he said in allocution that the reason that more defendant, more juveniles or more defendants don't come forward and tell the police what happened is because they'll get accused of being, of doing something that they didn't do, like what happened to the defendant here. So he maintained he was innocent. So that would have been his explanation absent the outstanding warrant? That it's certainly one that he put forth. Thank you. Mr. Austell. May the police question? We've already gone through Villa, which was not decided until after the trial in this particular case. Harris, which this court decided and then subsequently the Supreme Court heard and affirmed, said that section 150, 5151C allowed a juvenile adjudication to be brought in when a defendant testifies for impeachment purposes, but only if they open the door, which is essentially what Villa reiterated, that the defendant had to open the door. And in this case, the prosecution argued only if the defendant testified inconsistently with what he had previously told police, were they interested in bringing in that adjudication to impeach him, if his testimony was inconsistent, which is that particular reasoning is consistent with this court's holding in Harris, which said if you testify falsely or inconsistently or present a false or misleading portrayal of yourself to the jury, then that adjudication could be brought in. As you mentioned, unlike Harris and Villa, in this case the prosecution never placed this adjudication in evidence, did not raise it in rebuttal, and did not raise it in closing argument. So the jury never heard this from the prosecution. In this case, the prosecution never even filed a pretrial motion, and they only responded to the trial judge's questioning, were there any priors, and they said yes, there was this 2008 juvenile adjudication, and then the defense attorney objected to use the trial, and then of course there was the argument as to whether or not it could be used at trial. The defendant, as you've noticed, in a very brief exchange of trial, was the only person who brought this up, and having known in advance of trial that it could be used against him if he testified inconsistently or falsely about his criminal background. I see you're saying that attorney knew the law better than the judge. No, sir, I'm not. If I understand your question correctly, sir. Well, the judge didn't know the law, right? That's why it's there. The judge went through Montgomery and went through Harris, and he went through 5150, so yes, he did know the law, sir. He did? Yes. And I believe in Harris also, if I remember the facts of the case correctly. I know in VIA that the trial judge did make the ruling prior to the defendant's testimony that the juvenile adjudication could be used for impeachment purposes. But again, that's only if the defendant had already opened the door. In this case, the defendant certainly opened the door by testifying inconsistently with what he had told the police and what had been admitted already to the jury with the recordings that he had admitted to planning the crime, to being there at the time of the crime, at the shooting. The defendant had the gun prior to the crime and gave it back to the shooter. So he could have prevented this crime from happening in the first place. He hid the weapon. So we've got, you mentioned harmless error in this case. Certainly the very brief mention that only defendant brought up to he was justifying why I didn't go to the police. I had a warrant out for this prior, and the only warrant out was for his prior adjudication. So that's the only reason it came in. And then the defense counsel himself clarified exactly what the crime had been. Both of them could have left that out totally and never mentioned it. Even though they had this ruling, they knew they were unnoticed. You don't have to bring it in. And if you testify consistently, no problem. Nothing comes in. And in this case, assuming that the trial judge's ruling was error, it was harmless error because defendants statements came in and those statements admitted his involvement in the case. Gun was fine. What was the trial judge's ruling that you said? Assuming it was there, well, you ruled that it was admissible to impeach if the defendant testifying inconsistently. That's what the prosecution specifically asked for. Only if it was if the testimony was inconsistent with his version that he gave to the police prior. And you're saying that's consistent with via. I believe so. Yes, sir. Yeah. And of course, you know, defendant used the fact to explain again why he ran and did not go to the police. And we're saying that this this passing reference would have been harmless under the facts of this case and that the trial judge is ruling only a costume to explain why he didn't go to the police after work. Which was the if there are no further questions, people stand on their brief or any other argument on this and the other issues and ask to affirm. No, thank you, Mr. Hospital. Ms May. Some rebuttal. Just briefly to make two points. You're good. Could I ask you? Is that the trial judge's ruling that only if I don't think that that was the trial judge's ruling? Uh, what do you think the trial judge's ruling? In this case, the trial judge ruled that the evidence was admissible as impeachment and disregarded Massey Montgomery in terms and basically relied only on Harris and the amendments to the Juvenile Court Act in order to make a finding that this was going to be admissible. He was basically looking at that amended language in 1999, where the Juvenile Court Act had been amended to allow defendants. If he was if it was the defendant, his prior juvenile adjudications could be admitted with the language caveat pursuant to the rules of evidence for criminal trials. And that's what the judge was looking at here. He was not looking at Montgomery, Kearns or Massey. And I think that the state's argument is misstates what happened there in trial. And the only other point to make would be basically that under Harris, Harris basically stood for the position, not that if the defendant testified inconsistently, would his prior juvenile adjudication be admissible, but only if he testified dishonestly regarding his prior criminal history. So the ruling in Harris is a little bit more limited in its strength than the state argues. And if there are no further questions, we stand on a breeze on the rest of the issues. Thank you. Thank you, Ms. May. Thank you both for your arguments here this morning. The matter will be taken under advisement and rest assured that Justice McDade will be participating in the discussions and listening to the argument here today. A written disposition will be issued. And right now, we'll be in a brief recess again for a panel.